IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | Misc. No. 1:24-mj-1897 |
| **BRADLEY SCOTT NELSON,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \*

## OPINION AND ORDER

THIS MATTER is before the Court on the United States' request for detention pursuant to 18 U.S.C. § 3148 and Federal Rule of Criminal Procedure 40. On July 17, 2024, in the District for the District of Columbia, the United States of America moved for a bench warrant and revocation of Bradley Nelson's pretrial release, pursuant to 18 U.S.C. § 3148. The following day, Judge Bates granted the motion and issued a warrant for Mr. Nelson's arrest. Law enforcement officials executed the warrant in this District. The Court held an initial appearance on Monday, August 5, 2024. Immediately thereafter, at the parties' request, the Court held a detention hearing to determine Mr. Nelson's status pending the revocation proceeding in the District of Columbia. In addition to arguments made at the hearing, the Court considered the following:

- The initial Pretrial Services Report, dated March 22, 2023;
- The Criminal Complaint and supporting Affidavit, dated March 20, 2023;
- The Indictment dated October 11, 2023;
- The arrest warrant dated July 18, 2024; and
- The United States' Memorandum in Support of Detention Pending Revocation Hearing, dated August 4, 2024.

The Court granted the government's motion.  Pursuant to Federal Rule of Criminal Procedure 40(c), this order summarizes the Court's reasons, including those announced orally.

Mr. Nelson originally appeared in the District for the District of Columbia, via teleconference, in March 2023 on charges arising out of his actions in Washington, D.C. on January 6, 2021.  The government alleged that Mr. Nelson participated in unlawful activity at the United States Capitol, including obstruction of an official proceeding; entering and remaining on restricted grounds; disorderly and disruptive conduct; and parading, demonstrating, or picketing in the Capitol.  *See United States of America v. Bradley Nelson*, No. 23-CR-205 (JDB), ECF 1 (Complaint), 21 (Indictment).  In its detention memorandum, the government proffered that before January 6, 2021, Mr. Nelson expressed both his intentions to travel to Washington, D.C. on that date and alleged desire for violence against public officials, including Sen. Mitch McConnell and then-Attorney General William Barr, while in D.C.  Gov't Mem. at 2.  The 25-page affidavit in support of the criminal complaint details several allegations, including video evidence of various statements attributed to Nelson, including: (1) his alleged statement to another person that "if we go beyond this point"—the final line of officers blocking entry to the Capitol—"we'll be going to jail tonight," and (2)  his referring to Sen. Mitch McConnell as being "on the [] bullseye" and suggesting that he would "regroup" before "coming back and taking this [expletive] tonight."  ECF 1 at 9, 23.  Notwithstanding such statements, the government did not allege—in either the charging documents or its presentation to the Court—that Nelson engaged in assault or other physical violence at the Capitol or thereafter.

Since March 2023, Nelson has been released on conditions pending trial.  ECF 6.  The release order restricts his possession of firearms and narcotics, and prohibits travel to Washington, D.C. except for court-related obligations.  The order does not include specific language regarding

use of social media or contact with potential witnesses and/or participants in the investigation leading to the pending charges. A grand jury in the District of Columbia returned a five-count Indictment in October 2023; Nelson remained on pretrial release.

The United States seeks revocation due to a series of statements and social media posts attributed to Nelson concerning public and law enforcement officials as recently as July 2024. These include:

- in August 2023, an image of a Georgia state judge—who was involved in an election interference case—with apparent crosshairs drawn on his head;

- in February 2024, an image of the New York Attorney General with crosshairs placed on her head and accompanying comments about Nelson's willingness to "give every [expletive] thing I have to watch that [expletive]'s head explode, or at least the back of her head blowout";

- an image of Supreme Court Justice Amy Coney Barrett with the comment "I pray to God with all my [expletive] heart that somebody cuts your [expletive] throat from ear to ear you worthless piece of [expletive]", made approximately one hour after the Supreme Court of the United States issued its decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), where Justice Barrett dissented; and

- in July 2024, an image of United States Attorney General Merrick Garland with apparent crosshairs drawn on his head.

Gov't Mem. at 6-8, 10. As part of its detention arguments, the government also describes two other videos of Nelson posted on June 28, 2024, less than ten minutes apart. In both videos, the government alleges, Nelson directs angry comments towards the Federal Bureau of Investigation (FBI), the agency leading the investigation giving rise to the pending charges. *Id.* at 8-9. Nelson

3

appears to refer to two FBI agents, stating his hatred for them and "offer to" get into "the MMA ring with you two pieces of [expletive]." *Id.* at 9. He continues, "[the offer] still stands [expletive]. Any day. [Expletive] you. Cause I'm not going to prison now [expletive]. Now what are you going to do. [Expletive] off." *Id.* One statement refers to the "FBI [expletive] math teacher"; the government proffers that the lead case agent in this investigation was a math teacher before joining the FBI. *Id.* at 9-10. Nelson refers to the second individual as a "Stabler-looking" person—a reference, according to the government, to a fictional character on the *Law & Order* television show. *Id.* at 10. The government maintains that the two individuals referenced are the same FBI agents who interviewed Nelson after his March 2023 arrest. *Id.* at 4. The government describes Nelson as becoming so "verbally combative and confrontational" towards one agent that a deputy United States Marshal escorted the agent to their car due to safety concerns. *Id.*

Two days after his post of Mr. Garland, the government sought revocation of his release.

## **DETENTION HEARING FINDINGS**

The Court held a detention hearing at the parties' request and pursuant to Federal Rule of Criminal Procedure 40 and 18 U.S.C. § 3143, 3148. To ensure compliance with Rule 40(c)'s mandate, this opinion supplements the Court's oral statements and written order of detention. Applying the relevant standards under the Bail Reform Act, 18 U.S.C. § 3142, the Court finds that a modification of release order is appropriate to ensure the safety of the community pending Nelson's revocation hearing in the U.S. District Court for the District of Columbia.

The government avers that detention is appropriate based on both risk of nonappearance and danger to the community. *See* 18 U.S.C. § 3142(g). The Court dispenses, quickly, of the first basis. The government expresses concern that Nelson, a Nevada resident without meaningful ties to the District of Columbia, is so displeased with his pending charges—and, perhaps, other actions

by government officials—that he may avoid appearing at trial.  Indeed, the Assistant United States Attorney espoused belief that Nelson's occupation as a long-haul truck driver creates a "temptation [to flee] that he might succumb to."  The Court disagrees.  The record does not reflect Nelson's nonappearance in this case or any other court proceeding in at least twenty years, if ever.  The United States Pretrial and Probation Office advises that Nelson reports to his supervising officer as required and has no apparent release violations noted before the government filed the pending motion.  This offsets any concern that a non-resident with few, if any, local ties will refuse to appear as required.

The more significant issue here is danger to the community.  The familiar parameters of Section 3142 authorize detention only where the Court finds both danger to the community if released and an absence of a condition or combination of conditions to reasonably assure the public's safety.  The Court is mindful, of course, that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Also guiding the Court's analysis is the limited nature of the present issue: the relevant question concerns neither Nelson's guilt of the underlying charges or whether he should remain detained until trial, but rather the appropriateness of detention during the limited time until the revocation hearing initiated by the government.

As *Salerno* instructs, preventative detention under the Bail Reform Act requires proof "by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community."  481 U.S. at 751; *see also United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021).  Such a threat must "be considered in context," including "the nature of the threat identified and the resources and capabilities of the defendant."  *Munchel*, 991 F.3d at 1283.

With these parameters in mind, the Court's paramount concern is the escalating nature of

Nelson's statements and their eventual direction towards the FBI agents who investigated and interviewed him. In general, Nelson's statements recently and abruptly took a specific turn towards individuals directly or indirectly related to his prosecution. These FBI agents are known to him, and their relevance to his prosecution is significant. One is, according to the government, the lead case agent, likely to play a significant role in further proceedings; the other agent participated in at least Nelson's custodial interview, if not more. To the extent the government's case relies on Nelson's statements, those agents may be called to testify and/or prepare other evidence. Accordingly, any threats to them, as members of the prosecution, carry particular significance. The Bail Reform Act's provisions reflect the importance of protecting the integrity of judicial proceedings. *See* 18 U.S.C. §§ 3142(c)(B)(v) (providing, as potential release condition, for a prohibition on contacting potential witnesses), 3142(h)(2) (referencing criminal statutes concerning intimidation, obstruction, tampering, and retaliation related to ongoing investigations or prosecutions).

    The Court is not persuaded by Nelson's counterarguments. First, he points to the absence of actual or attempted violence on January 6, 2021 or toward any individuals central to the government's concerns. This observation is true and weighs in his favor (unlike other § 3142 factors). But "a person could be deemed a danger to the community sufficient to justify detention even without posing a threat of committing violence in the future." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). The Court's consideration is an individualized one that turns on more than a binary examination of whether physical violence has been performed (or attempted). To that end, the Court considers violent rhetoric—which may not always be sufficient on its own—with the recency and specificity of escalating comments towards individuals connected to Nelson's prosecution. Second, Nelson

argues that the statements are not clearly threats; the argument suggests that he was blowing off steam or expressing frustration. While it is possible the video statements could have been more direct or explicit, they are not so vague or general as to be considered merely hyperbolic; the statements involve specific officials known to Nelson (and living or working near his city of residence) based on their relationship to the criminal investigation and prosecution of him. Third, Nelson suggests that a limitation on social media use could address the concerns about any of the statements at issue. While the Court must impose only the "least restrictive" conditions to reasonably assure the community's safety, the proposed restriction does not provide such assurance. Agreeing with other District of Columbia federal courts, the Court finds on these facts that "[e]ven if Mr. [Nelson's] computer and phone were effectively monitored by Pretrial Services, he could interfere with witnesses, particularly those in the Las Vegas area, through verbal communications." *United States v. DeGrave*, 539 F. Supp. 3d 184, 208 (D.D.C. 2021).[1] Fourth, Nelson argues that the release order did not prohibit contact with law enforcement officials and that adding such a condition may address concerns about the statements concerning the case agents. It is self-evident that intimidating, threatening, or tampering witnesses (which includes investigating agents) or otherwise obstructing an investigation are prohibited by any release order. *See* 18 U.S.C. § 3142(h)(2) (requiring judicial officers to advise released persons that such conduct is prohibited). The absence of such language does not justify Mr. Nelson's judgment and actions.

For the limited purpose of this issue, the statements towards the agents carry somewhat greater weight than other statements raised by the government. The Court does not, in any way, disregard or minimize statements concerning state and federal judges and attorneys general. Those

---

[1] At the hearing, the United States Probation Officer acknowledged the difficulty of effective supervision of Nelson's social media accounts.

comments and rhetoric are even more offensive and violent than the agent-focused statements. Moreover, they support concerns that Nelson might resort to violence in the future. *See Hale-Cusanelli*, 3 F.4th at 456 (noting, in a pretrial detention context, the trial court's consideration of a history of statements condoning violence). Yet, the Court is mindful of its directive to consider not only the nature of any alleged threats but also Mr. Nelson's resources and capabilities. Greater attenuation exists between Nelson and, for example, Attorney General Garland or a Georgia jurist, than between him and a case agent working (and, presumably, living) in the same district he does. Accordingly, the capability to act on any threats to the case agents appears greater than the capability to, for example, harm individuals based in and around Washington, D.C., a place that the release order prohibits him from visiting. Thus, the social media posts are relevant to the Court's conclusion but weigh differently—in this context—than the statements directed at persons Nelson has personally encountered.[2]

This is a close case. In balancing the relevant considerations required by the Bail Reform Act, the Court is also mindful of the tension between the need to assess danger to the community and Mr. Nelson's First Amendment right to express his views on politics, government officials, and social issues. Based on the foregoing, however, the Court finds that the present and proposed conditions are insufficient to provide reasonable assurance of community safety until Judge Bates can rule on the government's revocation motion. In doing so, the Court takes no position on whether Mr. Nelson committed the alleged violation. Second, the Court emphasizes that this detention is only until the revocation hearing, when the court with greater familiarity with Mr.

---

[2] Again, this conclusion does not downplay the seriousness of credible threats to any other individual. Nor should it be construed as opining on whether any of the statements presented form a lawful basis for other charges. The Court leaves the determination of probable cause for additional charges to a grand jury or judge, should the government pursue such charges.

Nelson can address fully the government's allegations.  While that date has not been set, the Court finds sufficient basis for detention for that (hopefully brief) period due to Nelson's escalating rhetoric.  Accordingly, upon consideration of the government's motion for detention, through modification of the release order pursuant to Rule 40(c), it is, this 6th day of August 2024,

    ORDERED that Bradley Nelson is remanded to the custody of the United States Marshals Service to be transported to the District of Columbia for further proceedings pursuant to 18 U.S.C. § 3148(b).

/s/
Charles D. Austin
United States Magistrate Judge